UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHISTOPHER MATHEY,

    Plaintiff,

v.

ROBERT CROMPTON,

    Defendant.

                        /

Case No. 1:24-cv-80

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Christopher Mathey ("Mathey"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Mathey sued defendant Dr. Robert Crompton for eye-related medical claims which arose at the MDOC's Oaks Correctional Facility (ECF). *See* Opinion (ECF No. 5, PageID.19). This matter is now before the Court on defendant's motion for summary judgment based solely on the failure to exhaust administrative remedies (ECF No. 10). Mathey did not oppose the motion.[1]

    **I.    Background**

The Court summarized Mathey's claim as follows:

> In Plaintiff's complaint, he alleges that he has a "history of glaucoma, which escalated to the level of severe inability to see/view anything and everything at both near and distance." (*Id.*, PageID.3.) Plaintiff claims that the prescription "glaucoma eye drops" he uses have caused him to "suffer[] in pain from the significant stinging, severe headaches, and inability to sleep." (*Id.*) Plaintiff states

---

[1] The Court has advised the parties that defendant's previously filed "Notice of Stay" (ECF No. 14) "does not apply to this civil action" and that the Court "will not stay the case as requested in the Stay Notice absent further explanation of relevance from the parties". *See* Order (ECF No. 15, PageID.85). Now, defendant has filed a "Motion for order to extend the bankruptcy stay as to the individual Wellpath Defendants" (ECF No. 17). The parties are advised that this case will proceed in the normal manner while defendant's motion to extend the bankruptcy stay is pending.

1

> that he "continue[s] to try [and] tolerate and use [the eye drops], to no avail." (*Id.*) Plaintiff alleges that he has been "forced to take/use" the eye drops for over a year, from 2023 to the present. (*Id.*) During that time period, Plaintiff was incarcerated at LRF and his present facility, ECF. (*Id.*)
>
> Plaintiff states that he "had a scheduled chart medical review to optometry for SLT scheduled procedure and surgery." (*Id.*) As of January 25, 2024, Plaintiff "still ha[s] not received any medical SLT treatment or surgery that [he] urgently and seriously need[s]." (*Id.*) Plaintiff alleges that this is "the responsibility of ECF Doctor Crompton, who is/has ignored [Plaintiff's] medical needs and [is] denying [Plaintiff] any/all scheduled appointments and urgent surgery." (*Id.*) Plaintiff states that this "shocks the conscience." (*Id.*)
>
> Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise an Eighth Amendment claim, a Fourteenth Amendment substantive due process claim, and state law claims against Defendant Crompton. (*See id.*, PageID.3-4.) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.4.)

Opinion at PageID.20-21 (footnote omitted).[2] The Court dismissed all of Mathey's claims except for the "individual capacity Eighth Amendment claims regarding eye-related medical care that Plaintiff received at ECF and Plaintiff's state law claims against Defendant Crompton." *Id*. at PageID.30.

## II.  Summary Judgment

### A.  Legal standard

Defendant has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[2] Mathey's complaint appears to refer to a state law claim for medical malpractice or perhaps an intentional tort, alleging that he was "intentionally, negligently, forced to take" glaucoma eye drops. *See* Compl. at PageID.3.

> stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, Mathey did not file a response in opposition to the motion for summary judgment. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within

five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Defendant points out that before filing the complaint, Mathey filed one grievance identified as LRF-23-01-0013-28I ("13"). *See* Defendant's Brief (ECF No. 10, PageID.46); Mathey's MDOC Prisoner Step III Grievance Report (ECF No. 10-1, PageID.53); Grievance 13 (ECF No. 10-1, PageID.54-58). This grievance lists an incident date of December 10, 2022. PageID.57. Mathey did not identify defendant Dr. Crompton in the grievance. Rather, the grievance referred to a "health care kite":

> On or around 12-10-22 I sent a health care kite in stating that the eye drops for my glaucoma gives me crazy side effects stating that surgery might be better option health gave me a treatment plan of just dont [sic] take them then so now they refuse to give me any type of treatment for my glaucoma I need medical treatment for this asap.

*Id*. The MDOC rejected the grievance at Step I because Mathey "[f]ailed to attempt to resolve the issue with staff", specifically

> The grievant did not attempt to resolve the issue with the staff member most directly involved prior to filing the grievance unless prevented by circumstances beyond

5

> his/her control of [sic] if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration.

PageID.57-58. The rejection was upheld at Steps II and III.

Based on this record, Mathey did not properly exhaust a grievance to support his constitutional claim against defendant Dr. Crompton. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Dr. Crompton's unopposed motion for summary judgment should be granted.

### III.  State law claims

As discussed, Mathey also alleged state law claims. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant

considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Mathey's state law claims should be dismissed without prejudice.

### IV. Recommendation

For these reasons, I respectfully recommend that defendant Dr. Crompton's motion for summary judgment on the basis of exhaustion (ECF No. 10) be **GRANTED**, that the supplemental state law claims be **DISMISSED**, and that this lawsuit be **terminated**.


Dated: January 13, 2025                                         /s/ Ray Kent
                                                                RAY KENT
                                                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).